1  JONATHAN ABEL (CA SBN #293086), Designated Counsel for Service
   Professor of Law
2  U.C. Law San Francisco, Immigrants' Rights Clinic
   200 McAllister Street, Rm. 342-200
3  San Francisco, CA 94102
   Telephone: 628-227-0746
4  Facsimile: 415-712-0228
   Email: abeljonathan@uclawsf.edu

5  *Pro Bono Attorney for Petitioner*

6

7              UNITED STATES DISTRICT COURT FOR THE
                    EASTERN DISTRICT OF CALIFORNIA
8

9  QUIRINO GUERRERO LEPE,
                                           Case No.
10                          Petitioner,
                                           **NOTICE OF MOTION AND EX**
11            v.                           **PARTE MOTION FOR TEMPORARY**
                                           **RESTRAINING ORDER AND**
12 TONYA ANDREWS, in official capacity,    **PRELIMINARY INJUNCTION;**
   Facility Administrator of Golden State Annex; **MEMORANDUM OF POINTS AND**
13 ORESTES CRUZ, in official capacity, Field **AUTHORITIES**
   Office Director of ICE's San Francsico Field
14 Office; TODD M. LYONS, in official capacity,
   Acting Director of ICE, KRISTI NOEM, in
15 official capacity, Secretary of the U.S.      Immigration Habeas Case
   Department of Homeland Security; PAM
16 BONDI, in official capacity, Attorney General
   of the United States,
17
                            Respondents.
18

19

20                        **NOTICE OF MOTION**

21       Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure and Rule 231 of the Local

22 rules of this Court, Petitioner respectfully moves this Court for emergency relief in the form of a

23 temporary restraining order directing Respondents to release Petitioner from custody unless,

24
   NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING
   ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND

within seven days of the Court's Order, Respondents provide Petitioner with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a).

Petitioner also seeks a temporary restraining order enjoining Respondents from relocating Petitioner outside of the Eastern District of California pending final resolution of this case.

This application is supported by a Memorandum of Points and Authorities, the Declaration of Jonathan Abel with accompanying exhibits, as well as any additional submissions that may be considered by the Court. As set forth in the Points and Authorities in support of this Motion, Mr. Guerrero Lepe merits a temporary restraining order in light of his unlawful continued detention without a bond hearing, in violation of his statutory rights under the Immigration and Nationality Act and his Due Process rights under the Fifth Amendment.

WHEREFORE, Petitioner prays that this Court grant his request for a temporary restraining order enjoining Respondents to release him from custody unless he is afforded a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days of this court's order.

Respectfully submitted this September 9th, 2025.

*/s/ Jonathan Abel*

Jonathan Abel

Attorney for Petitioner

NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND

## TABLE OF ARGUMENTS

TABLE OF AUTHORITIES ................................................................ 1

INTRODUCTION ........................................................................... 3

STATEMENT OF THE FACTS AND CASE ...................................... 7

LEGAL STANDARD ...................................................................... 13

ARGUMENT ................................................................................. 13

   A.    PETITIONER IS LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIMS  13

      The DHS-DOJ Interpretation of the Detention Statute Is Wrong Because: ......................... 14

    i.    It ignores the statutory title ............................................ 15

    ii.   It ignores the statutory text and context. .......................... 15

    iii.  It creates and then ignores "extra" words in the statute. ............. 16

    iv.  It renders a neighboring statute superfluous. ......................... 17

    v.   It ignores the word "warrant" in the text of the Section 1226(a). ............... 18

    vi.  It fails to provide any evidence that Petitioner is an "applicant for admission." ……..19

   B.    PETITIONER WILL SUFFER IRREPARABLE HARM ABSENT INJUNCTIVE RELIEF ..................................... 22

   C.    THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVOR GRANTING THE TEMPORARY RESTRAINING ORDER ...................... 24

CONCLUSION ............................................................................... 25

## TABLE OF AUTHORITIES

**CASES**

*Aguilar Maldonado v. Olson*,
  2025 WL 2374411 (D. Minn. Aug. 15, 2025) ........................................ 21

*Alliance for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ......................................................... 13

*Almendarez-Torres v. United States*,
  523 U.S. 224, 234 (1998).............................................................. 15

*Galvez v. Jaddou*,
  52 F.4th 821 (9th Cir. 2022) .......................................................... 24

*Garcia v. Bondi*,
  2025 WL 1676855 (N.D. Cal. June 14, 2025) ..................................... 24

*Ariz. Dream Act Coal. v. Brewer*,
  757 F.3d 1053 (9th Cir. 2014) ......................................................... 24

NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND
AUTHORITIES

*Arrazola-Gonzalez v. Noem*,
  2025 WL 2379285 (C.D. Cal. Aug. 15, 2025)................................................ 21

*Benitez v. Noem*,
  No. 5:25-cv-02190, Doc. 11 (C.D. Cal. Aug. 26, 2025) .............................. 21

*Davis v. Michigan Dep't of Treasury*,
  489 U.S. 803, 809 (1989)............................................................................ 16

*Diaz Martinez v. Hyde*,
  --- F. Supp. 3d ----, 2025 WL 2084238 (D. Mass. July 24, 2025)............. 21

*Doe v. Becerra*,
  2025 WL 691664 (E.D. Cal. Mar. 3, 2025) ................................................. 23

*Duncan v. Walker*,
  533 U.S. 167, 174 (2001)............................................................................ 18

*Garcia v. Noem*,
  2025 WL 2549431 (S.D. Cal. Sept. 3, 2025) .............................................. 21

*Gomes v. Hyde*,
  2025 WL 1869299, at *8 (D. Mass. July 7, 2025)...................................... 22

*Hernandez v. Sessions*,
  872 F.3d 976, 995 (9th Cir. 2017); ............................................................

*Garcia v. Bondi*,
  2025 WL 1676855  (N.D. Cal. June 14, 2025) ........................................... 22

*I.N.S. v. Lopez-Mendoza*,
  468 U.S. 1032, 1050 (1984)........................................................................ 10

*Jennings v. Rodriguez*,
  583 U.S. 281, 287 (2018)............................................................................ 15

*Kostak v. Trump*,
  No. 3:25-dcv-01093-JE, Doc. 20 (W.D. La. Aug. 27, 2025)...................... 21

*Leal-Hernandez v. Noem*,
  2025 WL 2430025 (D. Md. Aug. 24, 2025) ............................................... 21

*Lopez Benitez v. Francis*,
  2025 WL 2267803 (S.D.N.Y. Aug. 8, 2025)............................................... 21

*Lopez v. Heckler*,
  713 F.2d 1432 (9th Cir. 1983) .................................................................... 24

*Lopez-Campos v. Raycraft*,
  --- F. Supp. 3d ----, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025) ........ 21

*Guillermo M.R. v. Kaiser*,
  2025 WL 1983677 (N.D. Cal., Jul. 17, 2025)............................................. 24

*Maldonado Bautista v. Santacruz*,
  No. 5:25-cv-01874-SSS-BFM, *13 (C.D. Cal. July 28, 2025)................... 21

*Preap v. Johnson*,
  831 F.3d 1193 (9th Cir. 2016) .................................................................... 22

*Rodriguez Diaz v. Garland*,
  53 F.4th 1189, 1202 (9th Cir. 2022) .......................................................... 23

*Rodriguez-Vazquez v. Bostock*,

 NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND
AUTHORITIES

779 F. Supp. 3d 1239 (W.D. Wash. 2025)............................................................... 22

*Romero v. Hyde*,
--- F. Supp. 3d ----, 2025 WL 2403827 (D. Mass. Aug. 19, 2025)......................... 21

*Rosado v. Figueroa*,
2025 WL 2337099 (D. Ariz. Aug. 11, 2025)............................................................ 21

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
240 F.3d 832, 839 n.7 (9th Cir. 2001 ..................................................................... 13

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7, 20 (2008)............................................................................................ 13

*Zepeda v. INS*,
753 F.2d 719, 727 (9th Cir. 1983) ......................................................................... 24

**STATUTES**

8 U.S.C. § 1182(a)(6)(A)(i) .......................................................................... 5, 7, 14

1226(c) .................................................................................................................. 14

8 U.S.C. § 1225(b)(2)(A) ................................................................................. *passim*

8 U.S.C. § 1226 ................................................................................ 13, 14, 17, 18, 20

8 U.S.C. §§ 1229a .................................................................................................. 14

**TREATISES**

SCALIA AND GARNER,
READING LAW: THE INTERPRETATION OF LEGAL TEXTS (2012).................................. 14, 15, 16

**REGULATIONS**

8 C.F.R. §§ 1003.19(a), 1236.1(d)......................................................................... 12

# INTRODUCTION

Petitioner Quirino GUERRERO LEPE seeks a Temporary Restraining Order ("TRO") that requires Respondents to release him from custody or to provide him with an individualized bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days of the issuance of the TRO. Petitioner is in the physical custody of Respondents at the Golden State Annex. *See* Declaration of Jonathan Abel ("Abel decl.") at ¶ 3.[1] He now faces unlawful detention because the Department of Homeland

---

[1] Facts asserted in this motion are drawn from the attached declaration of Jonathan Abel, counsel for Petitioner, and from exhibits to that declaration. Further citation will be made directly to the individual exhibits attached to the declaration, or to the declaration itself, hereinafter "Abel decl."

NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

Security ("DHS") and the Executive Office of Immigration Review ("EOIR")—an arm of the U.S. Department of Justice—have concluded that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Exs. L, O, N.

For the last 32 years, Petitioner has resided continuously in California. Abel decl. at ¶ 4; Ex. B at 3; Ex. M. California is the state where Petitioner met and married his wife, Ex. D at 3, 8; the state where Petitioner served as a "father figure" to half a dozen U.S. citizen nieces and nephews, Ex. D at 11, 15, 19, Ex. F at 30; the state where Petitioner mentored younger workers and became "Employee of the Year" at his painting company, Ex. D at 15, Ex. E at 21; and the state where he nearly died from a stroke just three years ago, Ex. D at 3, Ex. F at 13.

On August 21, 2022, at the age of 45, Petitioner underwent emergency surgery for a brain hemorrhage. Ex. F at 27. Doctors at U.C. San Francisco Medical Center would later tell Petitioner that they were "shocked" that he survived. Ex. D at 3. Petitioner spent two months in the hospital and then was released with the monumental task of having to re-learn how to walk, talk, and bathe. Ex. D at 3; Ex. F. at 28. With an inspiring determination, Petitioner worked his way back to health, but his doctors remained—and remain—concerned. To date, they have not been able to identify the cause of the stroke that nearly killed him. He has been referred to oncology and hematology to assess the cause of this stroke, but he is unable to find that care while incarcerated. Ex. F at 13; Abel decl. at ¶ 6. With Petitioner detained and not permitted access to his prescribed medication, Gabapentin, a frequently "intolerable" pain and numbness has befallen the entire right side of his body. Ex. F at 13; Ex. P at 2, 4, 6, 11; Abel decl. at ¶ 6.

Petitioner is detained in these conditions despite never having been accused of, much less convicted of any crime, and despite numerous ties to family, friends, and community institutions that show he is neither a danger nor a flight risk. Ex. B at 2-9.

NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

Petitioner is detained because of his decision to take his dog, Tadeo, for a walk on the morning of July 1. That morning, around 6 a.m., eight federal agents swept through Petitioner's street in San Pablo, Contra Costa County. Ex. G at 9. The agents claimed to be looking for Petitioner's brother-in-law, Facundo, a convicted felon who is homeless and does not live with Petitioner. Ex. G at 9; Ex. M at 3-4. But instead of arresting him, the agents found Petitioner about 200 yards down the street from Petitioner's home. Ex. G at 9; Ex. G at 4; Ex. M at 3-4. Without reasonable suspicion of any immigration or criminal violation, eight agents seized Petitioner, interrogated him, and then went to his home to demand that Petitioner's niece retrieve his identification from his private room—all the while concealing from the niece that they worked for ICE.[2] Ex. G at 9; Ex. G at 4; Ex. M at 3-4.

Incarcerated since July 1, Petitioner stands accused of a single ground of inadmissibility under the immigration laws: having entered the United States without inspection. 8 U.S.C. § 1182(a)(6)(A)(i). Ex. K at 1. DHS denied him release from immigration custody, consistent with a new DHS policy issued on July 8, 2025, instructing all Immigration and Customs Enforcement (ICE) employees to treat anyone alleged to be inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as an "applicant for admission" under 8 U.S.C. § 1225(b)(2)(A) and therefore subject to mandatory detention. Ex. Q.

Petitioner sought a bond redetermination hearing before an immigration judge ("IJ"). Ex. B. But on August 27, 2025, Immigration Judge Katie G. Mullins denied bond on "jurisdictional" grounds, adopting the DHS argument about ineligibility under Section 1225(b)(2)(A). Ex. N, Ex. O. Her written order of August 27 consisted of a checkmark in a box entitled, "Denied, because," and a single sentence: "Respondent has not met his burden to show that the Court has jurisdiction

---

[2] In the two months since the illegal arrest, the agents have not come back to look for the brother-in-law. Ex. G at 4.

NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

1  over his request for custody redetermination, and the Court denies the bond request on

2  jurisdictional grounds."  Ex. N.

3        The immigration judge concluded that Petitioner was subject to mandatory detention

4  under Section 1225(b)(2)(A) as an "applicant for admission" "seeking admission,",

5  notwithstanding Petitioner's decades of continuous residence in California and notwithstanding

6  the statutory arguments raised by Petitioner's counsel in the hearing and in a motion specifically

7  addressing jurisdiction. Ex. H. The immigration judge denied that jurisdictional motion with

8  another checkmark in a box and the same one-sentence explanation about lack of jurisdiction.

9  Ex. O. The judge's denial of Petitioner's request for a bond hearing was in line with the new

10  DHS policy on mandatory detention for those alleged to have entered without inspection—a

11  policy that DHS admits was issued "in coordination with the Department of Justice (DOJ)." Ex.

12  Q. This policy was subsequently endorsed by the Board of Immigration Appeals in a decision

13  issued September 5, 2025. *See Matter Yajure Hurtado*, 29 I&N Dec. 216, 220 (BIA 2025).

14        Petitioner's detention on the bases of Section 1225(b)(2)(A) violates the plain language

15  of the Immigration and Nationality Act and flatly contradicts half a dozen basic precepts of

16  statutory construction and legal analysis. In short, Petitioner should be deemed detained under 8

17  U.S.C. § 1226(a), which allows for bond. But the immigration judge and DHS have instead—and

18  improperly—deemed Petitioner detained under Section 1225(b)(2)(A), which does not permit for

19  bond.

20        The basic error in this analysis is that the mandatory detention statute—Section

21  1225(b)(2)(A)—applies to "arriving" individuals apprehended near the border, not to individuals,

22  like Petitioner, who are accused of entering the country decades ago and are arrested hundreds of

23  miles north of the border.

24  NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING
   ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND
   AUTHORITIES

Text, case law, agency practice, and common sense all demonstrate why Petitioner should be deemed detained pursuant to Section 1226(a) and, thus, declared eligible for a bond hearing.

Respondents' interpretation to the contrary is a dangerous transgression of the INA, the Administrative Procedure Act, and due process. Petitioner has filed a writ of habeas corpus requiring that he be released unless Respondents provide a bond hearing under § 1226(a) within seven days of this Court's order granting the writ.

Respondents' new policy and the resulting ongoing detention of Petitioner without a bond hearing deprive Petitioner of statutory and constitutional rights and unquestionably constitute irreparable injury. Thus, Petitioner seeks a Temporary Restraining Order enjoining Respondents to release him from custody if he is not provided an individualized bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days of the TRO.

Petitioner also seeks an order prohibiting Respondents from relocating him outside of the Eastern District of California pending final resolution of this litigation.

## STATEMENT OF THE FACTS AND CASE

Petitioner is a forty-eight-year-old husband who has lived continuously in California for the past 32 years. Abel decl. at ¶ 5; Ex. M at 3. Petitioner has lived and worked for decades in Northern California, primarily Contra Costa County. He met his wife 25 years ago in California while dancing Banda. Ex. D at 3. They have been together since then, living at the same address in San Pablo the entire time. Ex. D at 3, 6. (This is the address to which Petitioner would return if released on bond.) Petitioner and his wife married in 2012 in Contra Costa County. Ex. D at 8.

ICE detained Petitioner on July 1, 2025, while he was walking his dog in San Pablo, California. Ex. M. The ICE agents completed a "Warrant of Arrest" and issued a Notice to

NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

Appear ("NTA") initiating removal proceedings. Ex. I at 4; Ex. K. The NTA alleged Petitioner was not a citizen of the United States and had not been admitted or paroled into the United States, thus resulting in a charge of inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i). Ex. K. Petitioner was placed into ICE custody at Golden State Annex ("GSA"). Ex. P at 15. GSA is a private detention center located in McFarland, California, that is owned and operated by GEO Group, Inc. ("GEO"). GEO is a private prison company that has facilities on three continents.[3] For years, immigrants detained at GSA have raised the alarm about unlivable and unsanitary housing conditions, as well as concerns regarding their treatment.[4]

Petitioner sought review of ICE's custody decision by filing a "Motion to Calendar Custody Redetermination Hearing." Ex. B. This 10-page brief described why Petitioner was not a danger or a flight risk—the two criteria used to evaluate bond in detention hearings subject to 8 U.S.C. § 1226(a). The motion included numerous letters of support from family, friends, and colleagues, who described Petitioner's deep ties to the community. The letters describe him as a "father figure" to numerous U.S. citizen nieces and nephews, Ex. D at 11, 15, 19, Ex. F at 30, "a great role model and a pillar of the community," Ex. E at 11, a man with "deep ties to our family and our community here in California," Ex. D at 24, and one who "has shown up for our grandparents, our cousins, and for every celebration and emergency alike," Ex. F at 30.

Juan Fernando Paredes, a U.S. citizen nephew, wrote of the love and mentoring he received—and continues to receive—from Petitioner:

Quirino has been in my life since the day i was born 23 years ago[.] Quirino

---

[3] The GEO Group, Inc., https://www.geogroup.com/facilities/golden-state-annex/ (last visited September 4, 2025).

[4] *See e.g.*, "Advocacy Letter: Urgent request to stop new intakes at Golden State Annex," CCIJ (March 11, 2024) at https://www.ccijustice.org/advocacy-gsa-population-increase (highlighting a rise in reports regarding failure to provide drinking water, timely and adequate medical care, soap or underwear and shoes, and disruptions to means and programming).

NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

wasn't able to have children of his own but he was a father figure to me[,] was always there for me when I didn't have my dad[.] [H]e showed me to see the good in life even when things go wrong showed me how to be responsible and hardworking.

Ex. D at 11. Ailyn Austin, another one of Mr. Guerrero Lepe's U.S. citizen nieces, wrote:

There was a time when I was severely depressed and couldn't bring myself to eat, but my uncle went out of his way and took my family and I out to San Francisco because he knew I loved it there and knew that it would cheer me up not to be alone.

Exh. D at 19. "He has been someone I can always rely on," wrote his niece, Rita Austin, from picking up her kids after school to dropping everything to rescue her when her car broke down. Ex. D at 15.

Colleagues and supervisors from the company where he has worked for the last ten years wrote letters praising Petitioner as "[a] hard worker and extremely skilled in his trade as a painter. . . respectful, reliable and always willing to go the extra mile to ensure work was completed in a timely and satisfactory manner." Ex. E at 21. Ignacio R. Martinez, a U.S. citizen friend of 10 years (and former coworker), described Petitioner as "a respectable individual," "family oriented," a man with "an incredible work ethic." Ex. E at 25. "Men, like Quirino, are truly admirable. They don't make excuses or pout. Instead they just put their heads down and find a way to get things done." *Id.*

The bond motion also described the life-changing stroke that Petitioner suffered in August 2022. Doctors found a brain hemorrhage and moved swiftly to operate, thus preventing his death. "Afterwards, they told me they were 'shocked' that I was still alive," Petitioner recounts of the surgery. Ex. D at 3. His primary care doctors, Dr. Yesenia Salazar and Dr. Daphne Miller, wrote that "[d]uring Mr. Lepe's hospitalization, a consult with hematology and oncology suggested further workup to identify the cause of his stroke and concurrent blood clots.

As a result, labs for antiphospholipid syndrome, anemia, lipids, kidney and liver function, and diabetes have been ordered and need to be collected." Ex. F at 13. These tests have not been carried out because of his detention. "Currently," the doctors wrote, "Mr. Lepe is at a very high risk for a stroke, blood clots and a heart attack. In my professional opinion, continued detainment will only increase that risk." Ex. F at 13.

In addition to this bond motion, Petitioner submitted an eight-page motion addressing the jurisdictional question and statutory interpretation arguments that Petitioner presents in his habeas petition. This filing in immigration court, "Motion to Find Respondent Detained Under INA § 236(a)," Ex. H, explained exactly why Petitioner should be deemed bond eligible, rather than be subjected to mandatory detention.

On the evening before the bond hearing, DHS filed a legal brief arguing for mandatory detention, but not addressing any of the arguments raised in Petitioner's previous brief on jurisdiction. Ex. L. The DHS brief was simply the standard brief filed in these cases, so untailored to the specifics of Petitioner's case that it referred to Petitioner as "s/he." Ex. L. DHS also filed a copy of Form I-213, "Record of Deportable/Inadmissible Alien." Ex. M.

At the bond hearing on August 27, 2025, which was held online, Immigration Judge Katie G. Mullins acknowledged the family, friends, and doctors present in the audience in support of Petitioner. Abel decl. at ¶ 4.[5] The judge then asked if there were objections to any of the evidence submitted. Abel decl. at ¶ 4. Petitioner moved to suppress the I-213 document on the grounds that it was obtained as the result of an "egregious" or "widespread" violation of the Fourth Amendment and was thus subject to the exclusionary rule. *See, e.g., I.N.S. v. Lopez-*

---

[5] There is no written transcript of the bond hearing. On the day of the bond hearing, Petitioner requested the audio recording from the court. The court indicated that it would take two to four weeks to produce. Abel decl. at ¶ 4.

NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

1   *Mendoza*, 468 U.S. 1032, 1050 (1984); *Orhorhaghe v. I.N.S.*, 38 F.3d 488, 493 (9th Cir. 1994);

2   *Oliva-Ramos v. Att'y Gen. of U.S.*, 694 F.3d 259, 279 (3d Cir. 2012). In addition, Petitioner

3   moved to suppress the I-213 as "unreliable," citing numerous errors in the I-213 and

4   contradictions between the I-213 and the sworn declarations of witnesses.[6] Abel decl. at ¶ 4.

5   After a brief oral argument by both sides, the immigration judge excluded the I-213 from being

6   used as evidence. Abel decl. at ¶ 4. Petitioner includes it here as an exhibit for reference, *see* Ex.

7   M, but it was not admitted into evidence at the bond hearing.

8          Next, the immigration judge asked for Petitioner's arguments about jurisdiction.

9   Petitioner's counsel made oral argument describing each of the statutory construction claims

10   outlined in his brief. *See* Ex. H. (These arguments anticipated the claims made in this habeas

11   petition and motion for temporary restraining order.) In addition, Petitioner argued that, because

12   the I-213 had been excluded from evidence, there was no evidence in the bond record to suggest

13   Petitioner was an "alien," much less an "applicant for admission" "seeking admission."[7] Abel

14   decl. at ¶ 4. The immigration judge did not ask any questions and the DHS attorney did not make

15   any argument beyond his brief. The judge then proceeded to rule that there was no jurisdiction to

16   consider bond—thus adopting the DHS-DOJ policy on this matter. Petitioner's counsel asked for

17   a ruling on the "Motion to Deem Respondent Detained under § 236(a)." Abel decl. at ¶ 4. The

18

19   [6] These errors and inconsistencies were: (1) the I-213 gave the wrong location for the stop, claiming that Petitioner

20   was "exiting" the residence, whereas the stop actually occurred 200 yards down the street, (2) the I-213 claimed that the ICE officer identified herself as an ICE officer to Petitioner's niece when she demanded the niece retrieve Petitioner's identification card from the house, but the niece states that the ICE officer said she was "police" and

21   never mentioned ICE until she was leaving the door, (3) the I-213 says Petitioner "claims to have no medical issues and is taking no medication," even though Petitioner has very serious medical issues, related to his stroke, and is

22   taking Gabapentin. *Compare* Ex. G (describing events through declarations of Petitioner and Rita Austin) *with* Ex. M (I-213's account of events).

23   [7] The crux of DHS's argument is that Petitioner is "subject to mandatory detention under section 235(b)(2) of the INA, 8 U.S.C. §1225(b)(2), because s/he is an applicant for admission and is in removal." Ex. L at 4. But the I-213 was the only evidence in the record of "alienage" or lack of inspection, prerequisite conditions of being an "applicant for admission" "seeking admission."

24   NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

judge said she would issue an order. Petitioner's counsel, for the second time in the hearing, asked for the judge to allow Drs. Salazar and Miller to be allowed to testify. Abel decl. at ¶ 4. The immigration judge denied that request. Abel decl. at ¶ 4.

Shortly after the bond hearing, the judge issued an order on the bond redetermination in which she marked a checkbox entitled, "Denied, because," and wrote a single sentence: "Respondent has not met his burden to show that the Court has jurisdiction over his request for custody redetermination, and the Court denies the bond request on jurisdictional grounds." Ex. N. She issued a similar order on the Motion to Find Respondent Detained Under INA § 236(a), denying it with another checkmark in a box and the same one-sentence explanation about lack of jurisdiction. Ex. O.

DHS's position was based on a new policy issued July 8, 2025, "in coordination with DOJ," which oversees immigration courts, asserting that all noncitizens who entered without inspection are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Ex. Q.

As a result of this policy and the immigration judge's ruling, Petitioner remains in detention. Petitioner's next Master Calendar Hearing is scheduled for September 11, 2025. Abel decl. at ¶ 5. His case will likely require multiple hearings over many months or even years, given the growing number of cases on the detained court docket. Abel decl. at ¶ 5. Without relief from this Court, Petitioner faces the prospect of long-term detention in ICE custody, separated from his family and community, without so much as a bond hearing. *Id.*

Petitioner's detention has caused him physical and emotional harm and significantly impacted his family's well-being. Ex. D at 23 ("His absence has been deeply felt, it's left an emotional hole in our family that's been genuinely traumatizing."); Ex. F at 30 ("His absence has left a painful gap. It's been emotionally heavy for all of us."). The disruption of medical care has

NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

led to frequently "intolerable" numbness on the right side of Petitioner's body. Abel decl. at ¶ 6;

Ex P. at 2. And the denial of his ability to obtain the care prescribed by his doctors, namely,

referrals to oncology and hematology and diagnostic testing, has put his life at risk. Abel decl. at

¶ 6; Ex. F at 13 (providing statement of Petitioner's doctors: "Currently Mr. Lepe is at very high

risk for a stroke, blood clots and a heart attack. In my professional opinion, continued detainment

will only increase that risk.").

If released from custody, Petitioner plans to move back to his former residence, with this

wife, and his close family. Abel decl. at ¶ 7. His priorities are his immigration case, which he

will pursue with the help of his attorney, the care of his family, and his medical care. *Id.*

## LEGAL STANDARD

Petitioner is entitled to a temporary restraining order if he establishes that he is "likely to

succeed on the merits … likely to suffer irreparable harm in the absence of preliminary relief,

that the balance of equities tips in [his] favor, and that an injunction is in the public interest."

*Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008); *Stuhlbarg Int'l Sales Co. v. John D.*

*Brush & Co*., 240 F.3d 832, 839 n.7 (9th Cir. 2001). Even if Petitioner does not show a

likelihood of success on the merits, the Court may still grant a temporary restraining order if he

raises "serious questions" as to the merits of his claims, the balance of hardships tips "sharply" in

his favor, and the remaining equitable factors are satisfied. *Alliance for the Wild Rockies v.*

*Cottrell*, 632 F.3d 1127 (9th Cir. 2011). Petitioner overwhelmingly satisfies both standards.

## ARGUMENT

### A.  PETITIONER IS LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIMS

Petitioner is likely to succeed on his statutory claim under the Immigration and

Nationality Act and his claim that his mandatory detention violated the Due Process Clause of

the Fifth Amendment.

NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND
AUTHORITIES

Petitioner has shown he is likely to succeed on his claim that he is eligible for a bond hearing under 8 U.S.C. § 1226, and that he was deprived of this statutory right by an unlawful change in executive branch policy. The immigration judge's denial of bond eligibility amounted not simply to a violation of the INA but also to a violation of his due process rights.

Individuals charged with inadmissibility and deportability in removal proceedings, like Petitioner, have long been detained by DHS under 8 U.S.C. § 1226 and granted an initial bond hearing by an immigration judge, unless subject to mandatory detention due to criminal grounds provided for in the statute. *See* 8 U.S.C. §§ 1229a, 1226(c); 8 C.F.R. §§ 1003.19(a), 1236.1(d). However, on July 8, 2025, DHS issued a new policy instructing all Immigration and Customs Enforcement ("ICE") employees to consider each person alleged inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i)—*i.e.*, those who are alleged to be present without admission—to be deemed an "applicant for admission," and therefore subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A). Ex. Q. The new policy was implemented "in coordination with" the Department of Justice. *Id.* On September 5, 2025, more than a week after Petitioner's August 27 appearance in immigration court, the Board of Immigration Appeals (BIA) issued an opinion adopting this interpretation of the detention statutes. *Matter Yajure Hurtado*, 29 I&N Dec. 216, 220 (BIA 2025). Petitioner was summarily denied a bond hearing before an immigration judge pursuant to this new policy. Ex. N, Ex. O.

**The DHS-DOJ Interpretation of the Statute Is Wrong Because . . .**

The joint DHS-DOJ interpretation of Section 1225(b)(2) defies the INA's text, the INA's logic, and the well-established case law and practice interpreting this provision. Indeed, there are six separate grounds on which the DHS-DOJ interpretation of this law fails basic methods of statutory construction and legal analysis, because it: (i) It ignores the statutory title; (ii) It ignores

NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

the statutory text and context; (iii) It creates and then ignores "extra" words in the statute; (iv) It renders a neighboring statute superfluous; (v) It ignores the word "warrant" in the text of the statute, and (vi) It fails to provide any evidence that Petitioner is an "applicant for admission."

### i.    It ignores the statutory title.

First, the DHS-DOJ reading of the statute is wrong because it is incompatible with the title of Section 1225, "Inspection by Immigration Officers; *Expedited Removal of Inadmissible Arriving Aliens*; Referral for Hearing." 8 U.S.C. § 1225 (emphasis added). As the Supreme Court has explained, "the title of a statute and the heading of a section are tools available for the resolution of a doubt" about the meaning of a statute. *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998). Section 1225's title refers to "arriving" noncitizens who are put in "expedited removal proceedings." *Id.* These are the people to whom Section 1225(a)(1)'s definition of "applicant for admission" and Section 1225(b)(2)(A)'s mandatory detention provisions apply. The government gravely errs by applying the definition of "applicant for admission" to people who are not "arriving" and not in "expedited removal proceedings." In this case, Petitioner was not "arriving" or "seeking admission" when he was detained 500 miles north of the border, decades after he allegedly crossed it. Nor was he put in expedited removal proceedings. Section 1225(b)(2)(A) cannot apply to him.

### ii.    It ignores the statutory text and context.

Second, and relatedly, the DHS-DOJ reading violates the INA because it ignores the subject-matter of Section 1225. Section 1225 describes the procedures for the inspection and expedited removal of people detained at the border who are "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2)(A). The Supreme Court itself noted that the mandatory detention scheme in Section 1225(b)(2)(A) applies "at the Nation's borders and ports of entry, where the

NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

1  Government must determine whether a[] [noncitizen] seeking to enter the country is admissible."

2  *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Throughout, Section 1225's text makes clear

3  that it concerns apprehensions and "expedited" procedures carried out at the border—not actions

4  taken far from the border, as in Petitioner's case. That the DHS-DOJ reading of the statute

5  ignores this context is a sure sign that it is wrong. "It is a fundamental canon of statutory

6  construction," the Supreme Court explained, "that the words of a statute must be read in their

7  context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't*

8  *of Treasury*, 489 U.S. 803, 809 (1989). The context of Section 1225 demonstrates that

9  subsections 1225(a)(1) and 1225(b)(2)(A) apply to those apprehended at or near the border upon

10 arrival or shortly thereafter. They do not apply to those who are arrested deep in the interior of

11 the United States months or years or decades later. Quite simply, the DHS-DOJ reading of the

12 statute is an act of cherry-picking a definitional phrase from one context and applying it to

13 another context where it does not belong.

14    **iii.    It creates and then ignores "extra" words in the statute.**

15        Third, the DHS-DOJ reading of Section 1225(b)(2)(A) is wrong because it requires

16 courts to ignore numerous words in the text of that very subsection. As Justice Antonin Scalia

17 and his co-author, Bryan A. Garner, explain: "If possible, every word and every provision is to

18 be given effect." SCALIA AND GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS AT

19 174 (2012). A good interpretation of a statute will not result in "extra" words. Yet that is exactly

20 what occurs if one tries to apply Section 1225(b)(2)(A) to Petitioner's case. Here is the full text

21 of Section 1225(b)(2)(A), the mandatory-detention provision:

22       [I]n the case of an alien who is an applicant for admission, if the [1] *examining*
         *immigration officer* determines that an alien [2] *seeking* admission is [3] *not*
23       *clearly and beyond a doubt entitled to be admitted*, the alien shall be detained for
         a proceeding under section 240.

24  NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING
    ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND
    AUTHORITIES

8 U.S.C. § 1225(b)(2)(A) (emphasis and bracketed numbers added). Petitioner was never seen by an "examining immigration officer." There was never a "determin[ation] that . . ." he was "not clearly and beyond a doubt entitled to be admitted." Nor was Petitioner "seeking" anything at the time of his apprehension, other than to take his dog for a walk. The reason the DHS-DOJ application of the statute has all of these "extra" words is that the statute applies only to those who are "arriving" at the border and are candidates for "expedited removal." In *that* context, those "extra" words make sense, as there will be an "examining immigration officer" and there will be a determination of potential eligibility for immigration relief. These procedures are uniquely tethered to the border and they are described in exquisite detail in the subsections of Section 1225. But Section 1225's procedures have no purchase in the entirely different context of someone, in Petitioner's position, who is detained far from the border and decades after he has allegedly entered. Only by ignoring all of these "extra" words can DHS-DOJ claim to make its reading of the statute fit Petitioner. That is another strong indication that their reading is wrong.

### iv.    It renders a neighboring statute superfluous.

Fourth, the DHS-DOJ reading of Section 1225(b)(2)(A) violates the INA because it renders a neighboring subsection superfluous. In Section 1226(c), the INA describes people who would otherwise be eligible for bond under Section 1226(a), but are rendered ineligible for bond because of their criminal histories. *See* 8 U.S.C. § 1226(c). Of particular interest, subsections 1226(c)(1)(E)(i)-(ii) address people who are alleged to be inadmissible under 8 § U.S.C. 1182(a)(6)(A) as aliens present without inspection. According to these subsections, such people are ineligible for bond *only* if they are also "charged with, . . . arrested for, . . . convicted of . . ." certain crimes. *See* 8 U.S.C. § 1226(c)(1)(E)(i)-(ii). In short, Section 1226(c) requires mandatory detention for people who have entered without inspection *and* have criminal histories. But if the

NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

1   DHS-DOJ reading were correct, then all people who entered without inspection would be

2   mandatorily detained, regardless of whether they had criminal histories or not. Subsections

3   1226(c)(1)(E)(i) and (ii) would be superfluous, if the DHS-DOJ position were correct, because

4   Section 1225(b)(2)(A) would govern all cases where someone was alleged to have entered

5   without inspection. But we know that cannot be right, as these subsections of 1226(c)(1) were

6   the most recent subsections added by Congress to the INA just this year in the Laken Riley Act,

7   Pub. L. No. 119-1, 139 Stat. ___ (2025) (adding (E)(i) and (E)(ii) to Section 1226(c)(1)).

8   Congress would not have added the subsections only to see these additions rendered completely

9   superfluous. That is another sign that the government's reading of Section 1225(b)(2)(A) is

10  wrong.[8]

11  **v.      It ignores the word "warrant" in the text of the Section 1226(a).**

12          Fifth, the DHS-DOJ reading violates the INA because it ignores the textual references to

13  "warrant" in Section 1226(a). After Petitioner was detained and brought back to the ICE offices,

14  a warrant was issued for his immigration arrest. The warrant, Form I-200, is dated July 1, 2025,

15  and is signed by "Benito Sandoval – SDDO." It is clearly labeled: "Warrant for Arrest of Alien."

16  Its heading specifically identifies "Section[] 236 of the Immigration and Nationality Act." The

17  text of the INA makes clear that a person arrested by warrant is detained under 1226(a), not

18  1225(b)(2)(A). For example, the opening sentence of 1226(a) states: "Arrest, detention, and

19  release.—On a *warrant* issued by the Attorney General, an alien may be arrested and detained

20  pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. §

21  1226(a) (emphasis). By contrast, the word "warrant" does not appear anywhere in Section 1225.

22

23  [8] As the Supreme Court has explained, "It is our duty to give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 174 (2001); *see Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1259 (W.D. Wash. 2025); *see also* SCALIA AND GARNER, *READING LAW*, AT 174 ("If possible, every word and every provision is to be given effect. . . . None should needlessly be given an interpretation that cause it to . . . have no consequence.").

24  NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING
    ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND
    AUTHORITIES

This is a sure sign that Congress intended those arrested by warrant to be evaluated under Section 1226(a) and, thus, eligible for bond. Likewise, the Supreme Court noted that Section 1226(a)—INA 236(a)—" authorizes detention only '[o]n a warrant issued' by the Attorney General leading to the alien's arrest." *Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018). Other federal courts to consider this issue have agreed that an immigration arrest by warrant subjects a person to detention under 1226(a), thus making them bond eligible. *See, e.g.*, *Lopez Benitez v. Francis*, 2025 WL 2371588, at *4 (S.D.N.Y. Aug. 13, 2025) (pointing to warrant of arrest for noncitizen as evidence that "unequivocally establish[es]" he is "detained pursuant to . . . § 1226(a) [236(a)]").[9] But the DHS-DOJ reading of the statute ignores the warrant altogether, choosing to apply Section 1225(b)(2)(A) even though Section 1225 never mentions arrests by warrant and, frankly, contemplates only border arrests, where no warrant would be required. This is another indication that the government badly misreads Sections 1225 and 1226.

> **vi.     It fails to provide any evidence that Petitioner is an "applicant for admission."**

Sixth, the DHS-DOJ application of Section 1225(b)(2)(A) violates the INA because it deems Petitioner an "applicant for admission" without providing any evidence that he fits this definition. According to DHS, Petitioner is an applicant for admission because he is "[a]n alien present in the United States who has not been admitted." 8 U.S.C. § 1225(a). But the record of the bond proceedings does not contain any evidence that Petitioner is "an alien," much less that he "has not been admitted." As a fundamental point of due process, the government must present some evidence that Petitioner is an "alien" before it can deem him subject to mandatory detention or subject to the INA at all. The only evidence DHS submitted of Petitioner's alienage

---

[9] *See id.* (stating that facts of the case "can support only one conclusion—that [the noncitizen] was not mandatorily detained as a noncitizen 'seeking admission' under § 1225(b) [235(b)], but rather . . . under §1226(a) [236(a)]") (bracketed INA sections added).

NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

or his manner of entry into the country was Form I-213, titled "Record of

Deportable/Inadmissible Alien (I-213)." However, Petitioner objected to the inclusion of this

document in the bond record because it was obtained as the result of several Fourth Amendment

violations *and* because it was, on its face, "unreliable." The immigration judge ruled that this

document could *not* be admitted into evidence. With this I-213 excluded from evidence, there

was no evidence in the record that Petitioner was an "alien" or a person who entered without

inspection. (None of Petitioner's evidence suggests that he is an alien or entered without

inspection.) In this absence of evidence, it is all the more inappropriate to subject Petitioner to

1225(b)(2)(A)'s mandatory detention provision. The government must, at the very least, produce

*some* evidence before it can deem a person to be an "applicant for admission."

For the six distinct reasons outlined above, the mandatory detention provision of Section

1225(b)(2) cannot apply to people like Petitioner, who have resided in the United States for

decades prior to being placed in removal proceedings. Petitioner should be deemed detained

under 1226(a), which allows for bond.

Furthermore, finding Petitioner detained under Section 1226(a), rather than section

1225(b)(2)(A), make sense because it accords with years of agency practice and precedent

finding noncitizens charged as present without admission subject to 8 U.S.C. § 1226(a). *See* Ex.

R. The meaning of a statute cannot change from year to year, and yet that is what DHS and DOJ

are attempting to do through this contorted reading of Section 1225(a)(1) and 1225(b)(2)(A).

Federal courts have resoundingly rejected this attempt by DHS and DOJ to pivot to this

misreading of the detention statutes. The U.S. District Court in the Western District of

Washington found that such a reading of the INA is likely unlawful and that Section 1226(a), not

Section 1225(b), applies to noncitizens who are neither apprehended upon arrival to the United

NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND
AUTHORITIES

1  States nor within the first two years of presence. *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239,

2  1245 (W.D. Wash. 2025). In the Central District of California, detainees sought a nationwide

3  class action challenging this policy. *See Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-

4  SSS-BFM, Class Action Compl. & Am. Pet. for Habeas Corpus, Dkt. 15 (C.D. Cal. July 28,

5  2025). The district court granted a temporary restraining order for the named class members.

6  *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, Order Granting Pet'rs' Ex

7  Parte Appl. for TRO & Order to Show Cause, Dkt. 5 (C.D. Cal. July 28, 2025). The court

8  scheduled for October 17 a hearing on class certification and on a motion for summary judgment.

9        After exhaustive research on this question, Petitioner's counsel was unable to find any

10  federal court to have considered and accepted this DHS-DOJ interpretation. By contrast, every

11  federal court to have considered the question has rejected the DHS-DOJ interpretation of the

12  statutes. *See Vasquez Garcia v. Noem*, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025) (granting

13  habeas relief); *Lopez-Campos v. Raycraft*, --- F. Supp. 3d ----, 2025 WL 2496379 (E.D. Mich.

14  Aug. 29, 2025) (granting habeas relief); *Kostak v. Trump*, No. 3:25-cv-01093-JE, Doc. 20 (W.D.

15  La. Aug. 27, 2025) (granting preliminary relief); *Benitez v. Noem*, No. 5:25-cv-02190, Doc. 11

16  (C.D. Cal. Aug. 26, 2025) (granting preliminary relief); *Leal-Hernandez v. Noem*, No. 1:25-cv-

17  02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025) (granting habeas relief); *Romero v.

18  Hyde*, --- F. Supp. 3d ----, 2025 WL 2403827 (D. Mass. Aug. 19, 2025) (granting habeas relief);

19  *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW, 2025 WL 2379285 (C.D. Cal. Aug. 15,

20  2025) (granting habeas relief); *Aguilar Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411

21  (D. Minn. Aug. 15, 2025) (granting habeas relief); *Dos Santos v. Noem*, No. 1:25-cv-12052-JEK,

22  2025 WL 2370988 (D. Mass. Aug. 14, 2025) (granting habeas relief); *Rocha Rosado v.

23  Figueroa*, No. CV 25-02157, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025) (report and

24  NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING
   ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND
   AUTHORITIES

recommendation to grant habeas relief), adopted, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025)

(granting habeas relief); *Lopez Benitez v. Francis*, No. 25-Civ-5937, 2025 WL 2267803

(S.D.N.Y. Aug. 8, 2025) (granting individual habeas relief); *Maldonado Bautista v. Santacruz*,

No. 5:25-cv-01874-SSS-BFM, *13 (C.D. Cal. July 28, 2025) (granting preliminary relief); *Diaz*

*Martinez v. Hyde*, No. CV 25-11613-BEM, --- F. Supp. 3d ----, 2025 WL 2084238, at *9 (D.

Mass. July 24, 2025) (denying reconsideration of individual habeas relief); *Romero v. Hyde*, ---

F. Supp. 3d ----, 2025 WL 2403827 (D. Mass. July 19, 2025) (granting habeas relief); *Gomes v.*

*Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at *8 (D. Mass. July 7, 2025) (granting

individual habeas relief).

Indeed, DHS can point to no published decision by a district or circuit court that supports

their position. DHS has impermissibly revisited its legal position on detention and release

authorities to withhold protections that Petitioner would have otherwise been afforded under

Section 1226(a), and the immigration judge has unlawfully adopted a position contrary to law.

Petitioner is likely to succeed on the merits of his statutory claim.

## B. PETITIONER WILL SUFFER IRREPARABLE HARM ABSENT INJUNCTIVE RELIEF

Petitioner will suffer irreparable harm were he to remain deprived of his liberty and

subjected to continued incarceration by immigration authorities without being provided the bond

hearing that this motion for a temporary restraining order seeks.

The Ninth Circuit has recognized "irreparable harms imposed on anyone subject to

immigration detention" including "subpar medical and psychiatric care in ICE detention

facilities, the economic burdens imposed on detainees and their families as a result of detention,

and the collateral harms to children of detainees whose parents are detained." *Hernandez v.*

*Sessions*, 872 F.3d 976, 995 (9th Cir. 2017); *Garcia v. Bondi*, No. 3:25-CV-05070, 2025 WL

NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND
AUTHORITIES

1676855, at *3 (N.D. Cal. June 14, 2025) (order granting TRO found irreparable harm from

continued ICE detention); *see also Preap v. Johnson*, 831 F.3d 1193, 1195 (9th Cir. 2016)

(recognizing that detainees in ICE custody are held in "prison-like conditions.").

Petitioner has suffered significant physical pain because of his detention. He has reported

numbness along the right side of his body—pain that he says is frequently "intolerable." Ex. P at

2; Abel decl.. at ¶ 6. On his own, and with the assistance of counsel, Petitioner has repeatedly

asked for medical treatment in the detention facility, including an appointment with a doctor who

could prescribe Gabapentin, which his outside doctors have found to help him manage the

numbness and pain. Ex. P. After weeks of requests, Petitioner was seen by a doctor, but the

doctor denied his request for Gabapentin, placing him instead on a different drug, Cymbalta. Ex.

P at 1. According to Petitioner's outside doctors, Cymbalta has potentially dangerous side

effects, including a risk of bleeding. Abel decl. at ¶ 6. Further, Petitioner's continued

confinement not only interferes with his ability to access his medical care and prescriptions, but

also creates conditions—stress, lack of physical activity—that exacerbate his underlying risks for

heart attack, stroke, and other complications. Ex. F at 13.

Petitioner contends that his denial of a bond hearing violated his due process and

statutory rights. As this Court put it in *Doe*, the "violation of Petitioner's due process rights is

sufficient to satisfy the irreparable harm requirement." *Doe v. Becerra*, No. 2:25-CV-00647-

DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025). The violation of a statutory right is

similar in and of itself to an immediate and irreparable injury. *See Maldonado Bautista*, No. 5:

25-CV-01873-SSS-BFM at * 9 (*citing Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir.

2022)). A temporary restraining order is necessary to prevent additional irreparable harm by

continued unlawful detention.

NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND
AUTHORITIES

## C. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVOR GRANTING THE TEMPORARY RESTRAINING ORDER

The balance of equities and public interest, which merge in light of the fact that the government is the opposing party, strongly favors Petitioner. *See Soto Garcia*, 2025 WL 1676855, at *3 (citations omitted).

Federal courts have recognized a strong public interest "in upholding procedural protections against unlawful detention and … that the costs to the public of immigration detention are staggering." *Id.* Moreover, the government cannot suffer harm from an injunction that prevents it from engaging in an unlawful practice. *See Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983) ("[T]he INS cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."); *see also Doe*, 2025 WL 691664, at *6. "[I]t would not be equitable or in the public's interest to allow [a party] . . . to violate the requirements of federal law, especially when there are no adequate remedies available." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014); *see also Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) (holding that allowing continued violations of federal law would serve "neither equity nor the public interest").

Any burden imposed by requiring DHS to release Petitioner from custody until he is provided a bond hearing before a neutral decisionmaker is minimal and clearly outweighed by the substantial harm he and his family will suffer as long as he continues to be detained. *See Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983); *see also Soto Garcia*, 2025 WL 1676855 at *3.

If a temporary restraining order is not entered, the government would effectively be granted permission to ignore the statutory text of the INA and the requirements of Due Process. In this context, the public interest overwhelmingly favors entering a temporary restraining order

NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

1 | and preliminary injunction.

2 | **CONCLUSION**

3 | For all the above reasons, this Court should find that Petitioner warrants a temporary

4 | restraining order and a preliminary injunction ordering that Respondents release him from

5 | custody if he is not provided a custody redetermination hearing pursuant to 8 U.S.C. § 1226(a)

6 | within seven days of the TRO and enjoin the government from transferring his custody out of the

7 | Eastern District of California.

8 | Respectfully submitted this 8th day of September, 2025.

9 |

10 | */s/ Jonathan Abel*
Jonathan Abel
Attorney for Petitioner

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 | NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND
AUTHORITIES