1
2
3
4
5
6                        UNITED STATES DISTRICT COURT

7                        EASTERN DISTRICT OF CALIFORNIA

8

9    QUIRINO GUERRERO LEPE,                     No.  1:25-cv-01163-KES-SKO (HC)

10                       Petitioner,

11            v.                                 ORDER GRANTING MOTION FOR
                                                 PRELIMINARY INJUNCTION

12   TONYA ANDREWS, Administrator of             Doc. 2
     Golden State Annex Detention Facility,
13   ORESTES CRUZ, Field Office Director of
     the San Francisco Immigration and Customs
14   Enforcement Office, TODD M. LYONS,
     Acting Director of United States
15   Immigration and Customs Enforcement,
     KRISTI NOEM, Secretary of the United
16   States Department of Homeland Security,
     and PAMELA BONDI, Attorney General of
17   the United States,

18                       Respondents.

19

20           Petitioner Quirino Guerrero Lepe is a noncitizen who has lived in the United States for

21   over thirty years.  On July 1, 2025, Immigration and Customs Enforcement ("ICE") agents

22   arrested petitioner outside his home on a warrant issued pursuant to 8 U.S.C. § 1226.  Petitioner

23   was denied the opportunity for a bond hearing based on the government's new interpretation of

24   8 U.S.C. § 1225(b)(2)(A) as requiring mandatory detention during removal proceedings for all

25   noncitizens charged with entering the United States without lawful admission.  The government's

26   new interpretation of section 1225(b)(2)(A) would subject millions of noncitizens to mandatory

27   detention without the possibility of a bond hearing, regardless of how long they have resided in

28   the United States and without regard to whether they pose any flight risk or danger.  On

                                               1

1  August 27, 2025, an immigration judge found that petitioner was subject to section 1225(b)(2)(A)

2  and was therefore ineligible for release on bond.

3      On September 8, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a

4  motion for temporary restraining order, Doc. 3, arguing that the immigration judge erred in

5  concluding that he was detained under 8 U.S.C. § 1225(b)(2)(A) as that statute does not apply to

6  him.  Petitioner requests that the Court order his release or order respondents to provide him with

7  a bond hearing under 8 U.S.C. § 1226(a).[1]

8      On September 16, 2025, the government filed an opposition, Doc. 7, and on

9  September 18, 2025, petitioner filed a reply, Doc. 8.  The Court held a hearing on September 19,

10  2025.  Doc. 9.  At the hearing, the Court raised with the parties whether petitioner's motion

11  should be converted into a motion for preliminary injunction because the standard is the same and

12  respondents had notice and opportunity to respond through a written opposition and through oral

13  argument at the hearing.  *See* Docs. 7, 9.  The parties agreed that the motion should be converted

14  to one for a preliminary injunction.  As the parties agree that the motion is ripe for conversion and

15  do not believe that additional briefing is needed, petitioner's motion is converted to a motion for

16  preliminary injunction.  For the reasons set forth below, petitioner's motion for a preliminary

17  injunction is granted.

18  **I.      Background[2]**

19      The government has alleged that petitioner is a 48-year-old citizen of Mexico who entered

20  the United States 32 years ago.[3]  *See* Doc. 2-16, Ex. M; Doc. 2-3 at ¶ 5.  Petitioner states that he

21  has resided in California continuously for the last 32 years, and while here, has developed close

---

23  [1] At the hearing, petitioner clarified that he was seeking immediate release based on his improper
    detention under § 1225(b)(2)(A).

25  [2] This section includes information from petitioner's verified petition and the parties' other
    filings.  A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as
26  an affidavit."  *L. v. Lamarque,* 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt,* 833
    F.2d 196, 197–98 (9th Cir. 1987)).

28  [3] Petitioner is contesting in his immigration proceedings whether the government has proven his
    alienage.  *See* Doc. 8 at 2 n.1.

1　ties to the community.  Doc. 1 at ¶ 3.  He met and married his wife, became a father figure to six

2　of his U.S. citizen nieces and nephews, worked his way to become the head of quality assurance

3　and safety on his work crew at a painting company, and earned an "Employee of the Year" award.

4　Doc. 1 at ¶¶ 3, 49, 57–58.  He has never been arrested for, charged with, or convicted of a crime.

5　Doc. 1 at ¶ 56; *see* Doc. 2-16, Ex. M.  He also requires significant ongoing medical care.  In

6　August 2022, he suffered a stroke, spent two months in the hospital, and had to re-learn how to

7　walk, talk, and bathe himself.  Doc. 1 at ¶ 59.

8　　　　On July 1, 2025, federal agents stopped and interrogated petitioner while he was walking

9　his dog near his home in San Pablo, California.  Doc. 1 at ¶ 4.  The agents were looking for

10　petitioner's brother-in-law, who does not live with him.  *Id.* ¶ 5.  The agents demanded that

11　petitioner's niece retrieve petitioner's identification from his home, which she did.  *Id.* ¶¶ 4–5,

12　50–52.  The agents then obtained an immigration warrant for petitioner and arrested him for being

13　present in the United States unlawfully.  Doc. 2-12, Ex. I at 5.

14　　　　Following his arrest, ICE issued a notice to appear for removal proceedings and charged

15　petitioner as removable under 8 U.S.C. § 1182(a)(6)(A)(i), Doc. 1 at ¶ 54, as "[a]n alien present

16　in the United States without being admitted or paroled."  8 U.S.C. § 1182(a)(6)(A)(i).  ICE made

17　a custody determination to detain petitioner without bond.  Doc. 1 at ¶ 55; Doc. 2-16, Ex. M.

18　Petitioner filed a motion for custody redetermination with an immigration judge pursuant to

19　8 C.F.R. § 1236(d)(1), seeking his release on bond under 8 U.S.C. § 1226(a).  Doc. 1 at ¶ 55.  On

20　August 27, 2025, the immigration judge held a hearing and denied petitioner's motion, finding

21　that petitioner was subject to mandatory detention under section 1225(b)(2)(A).  *Id.* ¶ 60; Doc. 2-

22　17, Ex. N; Doc. 2-18, Ex. O.

23　　　　Petitioner is detained at Golden State Annex, an immigration detention facility in

24　McFarland, California.  Doc. 1 at ¶ 55.  Petitioner indicates that, since being detained, his medical

25　condition has worsened, and he has experienced numbness all along the right side of his body as

26　well as severe pain.  *Id.* ¶ 2.  Petitioner's doctors appeared at the August 27 immigration court

27　hearing, intending to testify to their view that petitioner should be released so that he can follow

28　up on his oncology and hematology referrals to identify the source of his 2022 stroke.  *Id.* ¶ 61.

1    According to petitioner's doctor, petitioner is a "very high risk for stroke, blood clots and a heart

2    attack," Doc. 2-9, Ex. F at 14.

3    **II.    Legal Standard**

4           The standards for issuing a temporary restraining order and a preliminary injunction are

5    "substantially identical." *See Stuhlbarg Int'l Sales Co. v. John D. Bush & Co.,* 240 F.3d 832, 839

6    n.7 (9th Cir. 2001).  "A preliminary injunction is an extraordinary remedy never awarded as of

7    right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553

8    U.S. 674, 689–90 (2008)).  "A plaintiff seeking a preliminary injunction must establish that he is

9    likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of

10   preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the

11   public interest." *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of

12   *Gambell, AK*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12

13   (1982)).  "Likelihood of success on the merits is a threshold inquiry and is the most important

14   factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting

15   *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)).  "[I]f a plaintiff can only

16   show that there are serious questions going to the merits—a lesser showing than likelihood of

17   success on the merits—then a preliminary injunction may still issue if the balance of hardships

18   tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the

19   *Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations

20   omitted).

21   **III.    Discussion**

22          **a.    Likelihood of Success on the Merits**

23          Petitioner argues that the immigration judge erred in concluding that he was mandatorily

24   detained pursuant to 8 U.S.C. § 1225(b)(2)(A).[4]  *See* Doc. 2 at 15–24.  This case is one of

25   _____

26   [4] Petitioner also briefly asserts that he is likely to succeed on the merits of his constitutional
     claim, but that claim is not briefed in the motion for temporary restraining order.  *See* Doc. 2 at

27   15–16.  As the parties confirmed at the hearing, the issue before the Court on the present motion
     is petitioner's statutory claim that the government has misapplied § 1225(b)(2)(A) and improperly

28   subjected petitioner to mandatory detention.

1    statutory interpretation, and the Court's analysis begins with the text of the statute.  *See Lackey v.*

2    *Stinnie*, 604 U.S. 192, 199 (2025).

3                                   **i.  Statutory Framework**

4           Two statutory sections govern the detention of noncitizens prior to a final order of

5    removal: 8 U.S.C. §§ 1225 and 1226.  Section 1225 governs the detention of noncitizens seeking

6    admission into the United States.  *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018).  As

7    relevant here, section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for

8    admission, if the examining immigration officer determines that an alien seeking admission is not

9    clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding

10   under section 1229a of this title."  8 U.S.C. § 1225(b)(2)(A).  "A noncitizen detained under

11   [s]ection 1225(b)(2) may be released only if he is paroled 'for urgent humanitarian reasons or

12   significant public benefit' pursuant to 8 U.S.C. § 1182(d)(5)(A)."  *Gomes v. Hyde*, 25 Civ. 11571,

13   2025 WL 1869299, at *2 (D. Mass. July 7, 2025).  "Other than this limited exception[,] . . .

14   detention under § 1225(b)(2) is considered mandatory . . . [and] [i]ndividuals detained under

15   § 1225 are not entitled to a bond hearing."  *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH),

16   2025 WL 2371588, at *3 (S.D.N.Y. Aug. 13, 2025).

17          While section 1225 "authorizes the Government to detain certain aliens *seeking admission*

18   *into the country*," section 1226 "authorizes the Government to detain certain aliens *already in the*

19   *country* pending the outcome of removal proceedings."  *Jennings*, 583 U.S. at 289 (emphasis

20   added).  Section 1226(a) sets out the "default rule" for noncitizens already present in the country.

21   *Id.* at 288.  It provides:

22                  On a warrant issued by the Attorney General, an alien may be
                    arrested and detained pending a decision on whether the alien is to
23                  be removed from the United States. . . . [T]he Attorney General--
                    (1) may continue to detain the arrested alien; and
24                  (2) may release the alien on--
                    (A) bond . . . ; or
25                  (B) conditional parole . . . .

26   8 U.S.C. § 1226(a).  "Section 1226(a), therefore, establishes a discretionary detention

27   framework."  *Lopez Benitez*, 2025 WL 2371588, at *3 (internal citations omitted).  An

28   immigration officer makes the initial determination to either detain or release the noncitizen, but

                                                    5

1    after that decision has been made, the noncitizen may request a bond hearing before an

2    immigration judge.  8 C.F.R. § 1236.1(c)(8), (d)(1).  At any such bond hearing, "the burden is on

3    the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does

4    not present a danger to persons or property, is not a threat to the national security, and does not

5    pose a risk of flight.'"  *Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) (citing *In re*

6    *Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

7              **ii.  Section 1225(b)(2)(A) Does Not Apply to Petitioner.**

8          The government argues that the applicable detention authority in this case is

9    section 1225(b)(2)(A), as the immigration judge concluded, because petitioner is an "applicant for

10    admission."  *See* Doc. 10 at 2–3.  The statute defines an "applicant for admission" as "[a]n alien

11    present in the United States who has not been admitted or who arrives in the United States

12    (whether or not at a designated port of arrival and including an alien who is brought to the United

13    States after having been interdicted in international or United States waters)."  8 U.S.C.

14    § 1225(a)(1).  For support, the government relies primarily on a recent decision of the Board of

15    Immigration Appeals ("BIA"), *Matter of Yajure Hurtado*, 26 I&N Dec. 216 (BIA 2025).  *See*

16    Doc. 7 at 4–10.  In that case, the BIA held that noncitizens who are present in the United States

17    without admission and are arrested on a warrant are subject to section 1225(b)(2)(A).[5]  *Matter of*

18    *Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025).

19          The government's argument that section 1225(b)(2)(A) applies to all noncitizens present

20    in the United States without admission is unpersuasive.  The government's proposed

21    interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A);

22    (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent

23    amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory

24    interpretation and practice.  Other district courts have reached a similar conclusion.  *See, e.g.*,

25    [5] The Court is not bound by *Matter of Yajure Hurtado*'s interpretation of sections 1225 and 1226.

26    "[C]ourts must exercise independent judgment in determining the meaning of statutory
provisions."  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394, 413 (2024).  After *Loper*

27    *Bright*, a federal court "may look to [the BIA's] interpretations [of the INA] for guidance, but
[must not] defer to the agency."  *Lopez v. Garland*, 116 F.4th 1032, 1036 (9th Cir. 2024).  For the

28    reasons stated in this Order, the Court finds *Matter of Yajure Hurtado* unpersuasive.

1    *Lopez Benitez v. Francis*, No. 25-Civ-5937, 2025 WL 2267803 (S.D.N.Y. Aug. 8, 2025);

2    *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *9 (D. Mass. July 24, 2025);

3    *Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at *8 (D. Mass. July 7, 2025);

4    *Vasquez Garcia v. Noem*, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Lopez-Campos v.*

5    *Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Kostak v. Trump*,

6    No. 3:25-cv-01093-JE, Doc. 20 (W.D. La. Aug. 27, 2025); Doc. 11, *Benitez v. Noem*, No. 5:25-

7    cv-02190 (C.D. Cal. Aug. 26, 2025); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428-JRR, 2025

8    WL 2430025 (D. Md. Aug. 24, 2025); *Romero v. Hyde*, No. 25-11631-BEM, 2025 WL 2403827

9    (D. Mass. Aug. 19, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW, 2025 WL

10   2379285 (C.D. Cal. Aug. 15, 2025); *Aguilar Maldonado v. Olson*, No. 25-cv-3142, 2025 WL

11   2374411 (D. Minn. Aug. 15, 2025); *Dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL

12   2370988 (D. Mass. Aug. 14, 2025); *Rocha Rosado v. Figueroa*, No. CV 25-02157, 2025 WL

13   2337099 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted* 2025 WL 2349133 (D.

14   Ariz. Aug. 13, 2025); Doc. 11, *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01874-SSS-BFM,

15   *13 (C.D. Cal. July 28, 2025).  The government has not identified any authority, other than the

16   Board of Immigration Appeals' recent decision in *Matter of Yajure Hurtado*, finding that

17   noncitizens such as petitioner who have been present in the United States for many years are

18   subject to section 1225(b)(2)(A).

19        As other courts have concluded, "[f]or section 1225(b)(2)(A) to apply, several conditions

20   must be met—in particular, an 'examining immigration officer' must determine that the

21   individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and

22   beyond a doubt entitled to be admitted.'"  *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL

23   2084238, at *2 (D. Mass. July 24, 2025); *see also Lopez Benitez*, 2025 WL 2371588, at *5.  As an

24   initial matter, respondents have failed to show in this case that an "examining immigration

25   officer" made these determinations.  The government points solely to the Notice to Appear issued

26   on July 1, 2025.  Doc. 7-1 at 5–8.  But that document does not contain any such findings by the

27   immigration officer.

28        The government argues section 1225(b)(2)(A) applies to all noncitizens living in this

county who did not lawfully enter, regardless of how long they have lived here or whether they ever took any affirmative step to seek admission.  The government's proposed interpretation of the statute ignores the plain meaning of the phrase "seeking admission."  *Martinez*, 2025 WL 2084238, at *6.  "Seeking" means "asking for" or "trying to acquire or gain."  Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/seeking.  And the use of a present participle, "seeking," "necessarily implies some sort of present-tense action."  *Martinez*, 2025 WL 2084238, at *6.  The term "admission" is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."  8 U.S.C. § 1101(a)(13)(A).  And "entry" has long been understood to mean "a crossing into the territorial limits of the United States."  *Hing Sum v. Holder*, 602 F.3d 1092, 1100–01 (9th Cir. 2010) (quoting *Matter of Pierre,* 14 I & N Dec. 467, 468 (1973)).  To piece this together, the phrase "seeking admission" means that one must be actively "seeking" "lawful entry."  *See Lopez Benitez*, 2025 WL 2371588, at *7.[6]

However, petitioner is not actively "seeking" "lawful entry" because he already *entered* the United States—thirty-two years ago.  If anything, petitioner is seeking to *remain* in the United States.  As *Lopez Benitez* noted:

> [S]omeone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there. As § 1225(b)(2)(A) applies only to those noncitizens who are actively "seeking admission" to the United States, it cannot, according to its ordinary meaning, apply to [petitioner], because he has already been residing in the United States

---

[6] This understanding is further buttressed by the fact that "lawful entry" may occur only after "inspection and authorization by an immigration officer," *see* 8 U.S.C. § 1101(a)(13), a process that typically must occur at the border or other port of entry.  *See Posos-Sanchez v. Garland*, 3 F.4th 1176, 1183 (9th Cir. 2021) (explaining that "inspection and authorization" must "take place at a 'port of entry'" for one to be considered to have "lawfully entered").  The regulations that set out "inspection procedures" make clear that inspection is a procedure that occurs at ports of entry.  *See* 8 C.F.R § 235.1(a) ("Application to lawfully enter the United States shall be made in person to an immigration officer at a U.S. port-of-entry when the port is open for inspection.").

for more than two years.

*Lopez Benitez*, 2025 WL 2371588, at *7; *see also Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025) ("[S]eeking admission' implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection.").

While petitioner could be considered an "applicant for admission" because he is allegedly an "alien present in the United States who has not been admitted," as defined at 8 U.S.C. § 1225(a)(1), the government has failed to show that, over 30 years after he entered the country, petitioner was actively "seeking admission." The government's "selective reading of the statute . . . ignores its 'seeking admission' language." *Martinez*, 2025 WL 2084238, at *6. "If, as the government argues, [section] 1225(b)(2)(A) was intended to apply to all 'applicant[s] for admission,' there would be no need to include the phrase 'seeking admission' in the statute." *Lopez Benitez*, 2025 WL 2371588, at *6. "That is, rather than stating that mandatory detention is required for any 'applicant for admission, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted,' the statute would instead provide for mandatory detention for any 'applicant for admission, if the examining immigration officer determines that [the] alien ~~seeking admission~~ is not clearly and beyond a doubt entitled to be admitted.'" *Id.* (quoting 8 U.S.C. § 1225(b)(2)(A)). The rule against surplusage counsels that "'every clause and word of a statute' should have meaning." *See United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) (quoting *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883)); *League of California Cities v. Fed. Commc'ns Comm'n*, 118 F.4th 995, 1019 (9th Cir. 2024) ("The rule against surplusage generally prohibits [a court] from interpreting [a statute] in a way that 'mak[es] a part of it unnecessary.'" (quoting *NLRB v. Aakash, Inc.*, 58 F.4th 1099, 1105 (9th Cir. 2023)). The government's position would make the "seeking admission" language meaningless and violate the rule against surplusage. *Martinez*, 2025 WL 2084238, at *6; *Lopez Benitez*, 2025 WL 2371588, at *6.

The government's argument also disregards the context of sections 1225 and 1226 and the broader statutory scheme. As the Supreme Court noted in *Jennings*, section 1225 applies "at the

1    Nation's borders and ports of entry, where the Government must determine whether an alien

2    seeking to enter the country is admissible." *Jennings*, 583 U.S. at 287.  Section 1225 "authorizes

3    the Government to detain certain aliens *seeking admission* into the country," whereas

4    section 1226 "authorizes the Government to detain certain aliens *already in the country* pending

5    the outcome of removal proceedings." *Id.*, 583 U.S. at 289 (emphasis added).

6        "It is a fundamental canon of statutory construction that the words of a statute must be

7    read in their context and with a view to their place in the overall statutory scheme." *Davis v.*

8    *Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989).  The title of section 1225 is "Inspection

9    by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing."

10   8 U.S.C. § 1225.  "Inspection" is a process that occurs at the border or other ports of entry.  *See*

11   *Posos-Sanchez v. Garland*, 3 F.4th 1176, 1183 (9th Cir. 2021) (explaining that "inspection and

12   authorization" must "take place at a 'port of entry'" for one to be considered to have "lawfully

13   entered"); 8 C.F.R § 235.1(a) ("Application to lawfully enter the United States shall be made in

14   person to an immigration officer at a U.S. port-of-entry when the port is open for inspection.").

15   The title of section 1225 also refers to "expedited removal," which applies to a noncitizen "who is

16   arriving in the United States" and "is inadmissible."  *See* 8 U.S.C. § 1225(b)(1)(A).  Additionally,

17   section 1225(a)(2) prohibits the admission of "stowaways"—noncitizens "who obtain[]

18   transportation without the consent of the owner . . . of any vessel or aircraft through concealment

19   aboard such vessel or aircraft," 8 U.S.C. § 1101(a)(49)—who would be discovered at the border

20   or a port of entry.  8 U.S.C. § 1225(a)(2).[7]

21       The third problem with the government's argument is that application of section

22   1225(b)(2)(A) to noncitizens already in the country would render superfluous a recent

23   amendment to section 1226(c).  *See Gomes*, 2025 WL 1869299, at *5.  Although section 1226(a)

24   sets out a discretionary detention scheme, section 1226(c) provides an exception which mandates

25   detention for certain criminal noncitizens.  *See* 8 U.S.C. § 1226(c)(1)(E).  Section 1226(c)(1)(E),

26   _____

27   [7] There are no similar references in section 1226.  *See* 8 U.S.C. § 1226.  Section 1226 references
     circumstances that logically would occur inside the country, such as the detention of certain
     "criminal aliens" upon their release from a correctional facility and the issuance of detainers to

28   "State [or] local officials."  *See* 8 U.S.C. § 1226(c)(1), (3).

which was added to the statute in 2025 by the Laken Riley Act, mandates detention for any noncitizen (i) who is inadmissible under section 1182(a)(6)(A)(i) as an "alien present in the United States without being admitted or paroled," *and* (ii) who "is charged with, arrested for, convicted of, or admits" to committing certain crimes.  8 U.S.C. § 1226(c)(1)(E) (emphasis added); *see Gomes*, 2025 WL 1869299, at *5 (explaining statutory section).

If every "applicant for admission"—which is defined, as relevant here, as an "alien present in the United States who has not been admitted," *see* 8 U.S.C. § 1226(a)(1)—is already subject to mandatory detention under section 1225(b)(2)(A), as the government contends, there would have been no need for the new section 1226(c)(1)(E), which mandates detention for every noncitizen who is "present in the United States without being admitted or paroled" *and* who has been "charged with, arrested for, or admits to" committing certain crimes, *see* 8 U.S.C. § 1226(c)(1)(E).  Reading section 1225 as the government proposes would thus render section 1226(c)(1)(E) superfluous.  *See Gomes*, 2025 WL 1869299, at *5; *Lopez Benitez*, 2025 WL 2371588, at *7; *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *11 (D. Mass. Aug. 19, 2025); *Maldonado v. Olson*, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411, at *12 (D. Minn. Aug. 15, 2025) ("The Court will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2).").

The government responds that Congress passed the Laken Riley Act to "foreclose loopholes."  Doc. 7 at 8.  The government does not identify any such loophole.  If the government's argument were correct, every noncitizen present in the United States without admission would already be subject to mandatory detention, and there would be no loophole to address.  A more satisfactory explanation for the passage of the Laken Riley Act provision is that Congress understood that not all noncitizens present in the United States who entered without lawful admission were subject to mandatory detention under section 1225(b)(2)(A), and Congress wanted to ensure that those who had certain criminal histories would be detained.  *Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411, *12 (D. Minn. Aug. 15, 2025) ("[C]ourts 'do not lightly' find that Congress adopted 'two separate clauses in the same law to perform the same work.' The Court will not find that Congress passed the Laken Riley Act to 'perform the same

11

1    work' that was already covered by § 1225(b)(2)." (quoting *United States v. Taylor*, 596 U.S. 845,

2    857 (2022)).

3        "When Congress acts to amend a statute, [the Court] presume[s] it intends its amendment

4    to have real and substantial effect." *See Stone v. I.N.S.*, 514 U.S. 386, 397 (1995); *Marx v. Gen.*

5    *Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an

6    interpretation would render superfluous another part of the same statutory scheme."). Section

7    1226(c)(1)(E) is a detention provision; it has no other purpose. *See* 8 U.S.C. § 1226(c)(1)(E). If

8    all noncitizens present in the United States without lawful admission were subject to mandatory

9    detention under section 1225(b)(2)(A) already—as the government argues—section

10   1226(c)(1)(E) would be superfluous.[8] *Maldonado*, 2025 WL 237441, at *12 ("If § 1225(b)(2)

11   already mandated detention of any alien who has not been admitted, regardless of how long they

12   have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless.").

13       The government further argues that petitioner's reading of section 1225(b)(2)(A) would

14   result in an "implied repeal" and would "strip DHS of its § 1225(b) detention authority." Doc. 7

15   at 8. Not so. Section 1225 contains two detention provisions: The first, section 1225(b)(1),

16   "applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack

17   of valid documentation." *Jennings*, 583 U.S. at 287 (citing 8 U.S.C. §§ 1225(b)(1)(A)(i),

18   1182(a)(6)(C), (a)(7)). The second, section 1225(b)(2), "is broader" and "serves as a catchall

19   provision that applies to applicants for admission not covered by [section] 1225(b)(1)." *Jennings*,

20   583 U.S. at 287 (citing 8 U.S.C. § 1225(b)(2)(A), (B)). It applies to applicants for admission

21   "who are inadmissible for reasons other than fraud, misrepresentation, or lack of valid

22   documentation." *Bollat Vasquez v. Wolf*, 460 F. Supp. 3d 99, 113 (D. Mass. 2020); *Brnovich v.*

23   *Biden*, 630 F. Supp. 3d 1157, 1163 (D. Ariz. 2022) ("[Section] 1225(b)(2) applies generally to all

24   _____

25   [8] The government argues that there is no superfluity. It argues that "statutory overlap is not the
     same thing as superfluity," Doc. 7 at 8, and cites, for this proposition, *United States v. Atlantic*

26   *Research Corporation*, 551 U.S. 128, 137 (2007). *Atlantic Research Corporation* does not
     support that proposition; there, the Court acknowledged that its interpretation would result in

27   superfluity, but said "[i]t is appropriate to tolerate a degree of surplusage rather than adopt a
     textually dubious construction." *Atl. Research Corp.*, 551 U.S. at 137.

28

1  applicants not covered by [section] 1225(b)(1).").[9]

2  Petitioner's arrest on a warrant issued under section 1226 further undermines the

3  government's argument that he is subject to mandatory detention under section 1225(b)(2)(A).

4  Section 1226(a) "authorizes the Government to detain certain aliens already in the country

5  pending the outcome of removal proceedings," *Jennings*, 583 U.S. at 289, "and it applies when a

6  noncitizen is 'arrested and detained' '[o]n a warrant issued by the Attorney General.'" *Gomes*,

7  2025 WL 1869299, at *5 (quoting 8 U.S.C. § 1226(a)).  Petitioner was arrested on a warrant

8  issued under section 1226(a).  *See* Doc. 2-12, Ex. I at 5.  ICE then made a custody determination,

9  *see* Doc. 1 at ¶ 55; Doc. 2-16, Ex. M, which is required by section 1226(a), *see* 8 C.F.R.

10  § 1236.1(c)(8), but not section 1225(b)(2), *see* 8 U.S.C. § 1225(b)(2)(A) ("[Any alien subject to

11  this section] *shall be* detained.").  While the government denies that it detained petitioner under

12  section 1226(a), that is the only provision that could have applied under the plain terms of the

13  statute.  *See also Jennings*, 583 U.S. at 281 (explaining that section 1226(a) applies to those

14  "already in the country"); *Gomes*, 2025 WL 1869299, at *5 (reaching the same conclusion);

15  *Lopez Benitez*, 2025 WL 2371588, at *10.[10]

16  The government contends that the use of a warrant is merely "paperwork [which] does not

17  change the statutory basis for detention."  Doc. 7 at 9.  But section 1226(a) "authorizes detention

18  *only* '[o]n a warrant issued' by the Attorney General," *Jennings*, 583 U.S. at 302, and section

19

20

---

21  [9] "Other grounds of inadmissibility include having a significant communicable disease, 8 U.S.C.
§ 1182(a)(1)(A)(i), having been determined to be a drug addict, 8 U.S.C. § 1182(a)(1)(A)(iv),

22  having been convicted of a felony involving moral turpitude or controlled substances, 8 U.S.C.
§ 1182(a)(2)(A)(i), having been convicted of crimes with aggregate sentences of confinement of 5

23  years or more, 8 U.S.C. § 1182(a)(2)(B), having engaged in human trafficking, 8 U.S.C.
§ 1182(b)(2)(H), having engaged in money laundering, 8 U.S.C. § 1182(b)(2)(I), having engaged

24  in terrorist activity, 8 U.S.C. § 1182(b)(3)(B), having participated in genocide, 8 U.S.C.
§ 1182(b)(3)(E), and so on."  *Bollat Vasquez*, 460 F. Supp. 3d at 113 n.20.

25  [10] The government argues that *Lopez Benitez* is distinguishable because the petitioner in that case

26  was initially encountered at the border, was released, and was then re-detained.  Doc. 7 at 9–10.
But this distinction makes no difference with respect to the government's argument; the

27  government makes the blanket argument that all noncitizens in the United States without having
lawfully been admitted are subject to mandatory detention under section 1225(b)(2)(A).

28

1225(b) contains no warrant requirement, *see* 8 U.S.C. § 1225(b).[11]  The use of a warrant is strong evidence that petitioner may be detained, if at all, only pursuant to section 1226(a).

The government previously applied section 1226(a) to noncitizens, such as petitioner, who entered the country without admission.  *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 n.6 (B.I.A. 2025) ("We acknowledge that for years Immigration Judges have conducted [section 1226(a)] bond hearings for aliens who entered the United States without inspection."); *Martinez*, 2025 WL 2084238, at *6.  While divining the meaning of a statute belongs to the "independent judgment" of the courts, "'the longstanding practice of the government'—like any other interpretive aid—'can inform [a court's] determination of what the law is.'"  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385–86, 412 (2024) (quoting *NLRB v. Noel Canning*, 573 U.S. 513, 525 (2014)).  The Court finds that the government's longstanding practice, under which section 1225(b)(2)(A) would not have applied to petitioner's circumstances, is consistent with the text and statutory scheme.  *See, e.g.*, *Lopez Benitez*, 2025 WL 2371588, at *8 (reaching same conclusion).[12]

The government also makes the policy argument that subjecting those who are detained at the border to mandatory detention, while allowing those who entered the United States without permission to be released on bond, "would create an incentive for aliens to enter unlawfully and take their chance at a bond hearing, rather than formally applying."  Doc. 7 at 5.  This argument disregards the different due process considerations at issue for noncitizens encountered at the border or ports of entry, versus for noncitizens who have established residence in this country.  As the court in *Romero* noted:

> The relevant distinction . . . is between persons inside the United States and persons outside the United States. That distinction is consistent with the long history of our immigration laws and with the

---

[11] A different provision permits warrantless arrests at the border.  Section 1357 states that "[a]ny officer . . . shall have power without warrant . . . to arrest any alien who . . . is entering or attempting to enter the United States in violation of any law or regulation . . . ."  8 U.S.C. § 1357.

[12] The fact that the government's new interpretation of statute conflicts with years of prior interpretation also supports that plaintiff has, at a minimum, shown that there are serious questions going to the merits of its claims regarding the statute's interpretation.

> Constitution. "[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S. Ct. 2491, 150 L. Ed.2d 653 (2001).

*Romero*, 2025 WL 2403827, at *12–13; *cf. Lopez-Campos*, 2025 WL 2496379, at *9–10 (finding that the government's application of section 1225(b)(2)(A) in similar circumstances violated detainee's due process rights).

Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690; *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). "It is therefore reasonable to read these statutes 'against [that] backdrop.'" *Romero*, 2025 WL 2403827, at *13 (quoting *Hewitt v. United States*, 145 S. Ct. 2165, 2173 (2025)). Moreover, policy arguments cannot override the plain meaning of the text. *See also Romero*, 2025 WL 2403827, at *12.

In sum, the Court concludes that petitioner is likely to succeed on the merits of his claim that he is not subject to mandatory detention under section 1225(b)(2)(A) and that he was wrongfully denied a bond hearing under section 1226(a).

### b. Irreparable Harm

Turning to the second *Winter* factor, the Ninth Circuit has recognized that there may be numerous "irreparable harms imposed on anyone subject to immigration detention," such as "subpar medical and psychiatric care in ICE detention facilities [and] the economic burdens imposed on detainees and their families as a result of detention." *Hernandez*, 872 F.3d at 995.

Petitioner has established that he will suffer irreparable harm in the absence of injunctive relief. Petitioner remains in need of treatment and medication following a serious stroke. Petitioner reports that the entire right side of his body has gone numb since his detention and he experiences pain that is frequently "intolerable." Doc. 1 at 2. According to petitioner's doctor, petitioner is a "very high risk for stroke, blood clots and a heart attack," Doc. 2-9, Ex. F at 14. The conditions in detention, such as stress and physical activity, "increase that risk." *See* Doc. 2-

1    9, Ex. F at 14.

2         The government does not dispute petitioner's evidence that his medical needs are

3    substantial or that his detention increases his risk of further medical complications.  Rather, it

4    argues that it has a strong interest in immigration enforcement and that "the government 'suffers a

5    form of irreparable injury' '[a]ny time [it] is enjoined by a court from effectuating statutes

6    enacted by representatives of its people.'"  Doc. 7 at 12 (quoting *Maryland v. King*, 567 U.S.

7    1301, 1303 (2012)).  The flaw in this argument is that the government is attempting to enforce the

8    immigration laws based on a misreading of the statutes, as addressed above.  As other courts that

9    have faced this issue have explained, the violation of petitioner's statutory rights causes

10   "immediate and irreparable injury."  Doc. 11 at 9, *Maldonado Bautista v. Santacruz*, No. 5:25-cv-

11   01874-SSS-BFM (C.D. Cal. July 28, 2025).

12              **c.    Balance of Hardships and Public Interest**

13        When the government is the nonmoving party, "the last two *Winter* factors merge."  *Baird*

14   *v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted).  In immigration court,

15   custody hearings are routine and impose a "minimal" cost.  *Doe v. Becerra*, No. 2:25-cv-00647-

16   DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025).  Thus, faced with a choice

17   "between [these minimally costly procedures] and preventable human suffering," as discussed

18   above, the Court concludes "that the balance of hardships tips decidedly in [petitioner's] favor."

19   *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

20        The public interest also weighs in petitioner's favor.  "The public has a strong interest in

21   upholding procedural protections . . ., and the Ninth Circuit has recognized that the costs to the

22   public of immigration detention are staggering."  *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL

23   1676854, at *3 (N.D. Cal. June 14, 2025) (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST,

24   2021 WL 783561, at *3) (N.D. Cal. Mar. 1, 2021).

25              **d.  Remedy**

26        The purpose of a preliminary injunction is to return the parties to the status quo ante,

27   which is "not simply [] any situation before the filing of a lawsuit, but instead [] 'the last

28   uncontested status which preceded the pending controversy.'"  *GoTo.com, Inc. v. Walt Disney*

16

*Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000). The government argues that petitioner was detained on July 1, 2025 pursuant to section 1225(b)(2)(A). The government has denied that petitioner was detained under section 1226. The government also does not argue that petitioner presents a flight risk or danger to the community. As section 1225(b)(2)(A) does not apply to petitioner, petitioner has shown a likelihood of success on his claim that the government may not detain him under section 1225(b)(2)(A). Given that the government does not assert any other basis for petitioner's detention and does not argue that petitioner presents a flight risk or danger, the appropriate remedy is petitioner's immediate release. If the government seeks to re-detain petitioner, it must provide no less than seven (7) days' notice to petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which petitioner's eligibility for bond must be considered.

## IV.    Conclusion and Order

Accordingly, petitioner's motion for preliminary injunction, Doc. 2, is GRANTED. The Court ORDERS that respondents release petitioner immediately. If the government seeks to re-detain petitioner, it must provide no less than seven (7) days' notice to petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which petitioner's eligibility for bond must be considered.

The security bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this, and the government has not established a need to impose a security bond.

IT IS SO ORDERED.

Dated:    September 23, 2025

UNITED STATES DISTRICT JUDGE

17